## UNITED STATES v. FARR'S EX'R.

(District Court, E. D. Pennsylvania. June 7, 1912.)

### No. 18.

INTERNAL REVENUE (§ 8*)—LEGACY TAXES—COMPUTATION.

  A vested life estate given by will passes on the death of the testator and its value for the purpose of computing the legacy tax thereon under War Revenue Act June 13, 1898, c. 448, §§ 29, 30, 30 Stat. 464, 465, as

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

amended by Act March 2, 1901, c. 806, §§ 10, 11, 31 Stat. 946, 948 (U. S. Comp. St. 1901, pp. 2307, 2308), is to be ascertained as of that date upon the expectancy of the life tenant according to the mortality tables in use, and is not affected by the fact that the life tenant dies before the expiration of the year allowed for payment of the tax.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 11, 12; Dec. Dig. § 8.*

Internal revenue tax on legacies, inheritances, and transfers, see note to Ward v. Sage, 108 C. C. A. 417.]

Action by the United States against George W. Farr's executor to recover legacy tax. Judgment for plaintiff.

Jasper Y. Brinton, Asst. U. S. Atty., and J. Whitaker Thompson, U. S. Atty.

Maurice B. Saul, J. W. Bayard, and J. G. Johnson, of Philadelphia, Pa., for defendant.

J. B. McPHERSON, Circuit Judge. The facts out of which this controversy arises will appear by the following case stated:

"George W. Farr, defendant's testator, died on the 13th day of December, A. D. 1901, having first made and published his last will and testament, in writing, dated the 20th day of February, A. D. 1899, and codicils thereto, dated, respectively, October 9, 1899, December 24, 1900, January 21, 1901, and July 23, 1901, which were duly proved and recorded in the office of the register of wills in and for the county of Philadelphia and state of Pennsylvania.

"By said will, after sundry specific bequests, he provided, inter alia, as follows:

"'I give and bequeath to my sister, Emma S. Farr, all my clothing, books, furniture, pictures, large mantel, marble parlor clock, jewelry, solid silver and silver plated ware, etc., in fact, all contents belonging to me now in my house No. 1810 Spruce street, Philadelphia, Pa., not otherwise disposed of by this will. After the payment of the foregoing legacies and annuities, I give and bequeath to my sister, Emma S. Farr, all the remaining net income of my estate, real, personal and mixed, for her own sole personal use and disposal, for and during the term of her natural life.'

"The said Emma S. Farr died on August 27, 1902.

"The value of the furniture and other articles bequeathed to the said Emma S. Farr was $767.50. The clear value of the residuary personal estate of the decedent in which the said Emma S. Farr had a life interest under the will aforesaid was $166,033.98. The total amount of the income paid to her, including the amount apportioned to the date of her death, was $5,738.08.

"Under the provisions of the Act of June 13, 1898, § 29, the defendant, on February 15, 1904, filed, under protest at the request of the plaintiff, and claiming, notwithstanding, that no tax was due, a return and schedule of legacies or distributive shares arising from personal property of any kind whatsoever, which were in charge or trust of the said defendant as executor of the estate of George W. Farr, deceased. In said return the interest of the said Emma S. Farr was valued at $43,919.38, said amount being the fair present value of a life estate in said sum of $166,033.98 to a person of the age of the said Emma S. Farr at the date of the death of the said decedent, as computed by the use of the mortality tables duly adopted by the plaintiff, the total valuation required to be made of the share of the said Emma S. Farr in the personal property of the estate of the said George W. Farr, and including the value of the furniture, etc., being thus $44,686.88. On the basis of the return so made under protest, a tax, at the rate of $1.12 for each and every hundred dollars of the clear value of such interest, was duly assessed by the plaintiff on the amount stated in said return; said tax being in the amount of $502.72. The amount of the tax assessed as aforesaid not having been paid within the 10-day period required by law, demand was made upon

the defendant by the plaintiff, on March 7, 1904, for the payment of the said. sum, together with the payment of an additional sum of $25.14, which the plaintiff claims to be due by the defendant as a 5 per·cent. penalty for failure to pay within said 10 days, as so required, but which said amount defendant refused and since refuses to pay to plaintiff."

The life tenant's estate was vested—that much is conceded—and in my opinion passed to her in possession and enjoyment at the death of the testator, namely, on December 13, 1901. On that date the will took effect, the estate vested, and the obligation to pay the tax came into being. The government's right to demand a tax was then complete, and it only remained to ascertain the amount. This was properly done by valuing the estate according to the accepted tables of mortality. U. S. v. Fidelity Trust Co., 222 U. S. 158, 32 Sup. Ct. 59, 56 L. Ed. ——. Such valuation could not have been objected to, and would probably have met with no dispute, if the life tenant had been alive at the expiration of the year of grace that the act of March 2, 1901, allows for the payment of the tax. But I think the death of the life tenant before the end of her expectancy can make no difference in the method of ascertaining the actual value of the estate to be taxed. Before the death of a life tenant, no one can be sure of the exact value. The tenant may live longer than the expectancy declared by the tables. In that event, the actual value of the estate is shown to be larger than the value put upon it at the testator's death. On the other hand, the tenant may die before the limit of expectancy is reached, and thus the actual value will be shown to be less than the value at the testator's death. But it cannot be believed that the government must wait for its tax until the life tenant shall die, in order that the actual value may be ascertained beyond peradventure. The law permits a reasonable course to be taken—the use of mortality tables—so as to reach an average, and exceptional cases must necessarily be disregarded. In a situation like the present, the government gets a larger sum than could have been exacted if the date of the life tenant's death could have been predicted; but, if the tenant proves to be unusually long lived, it may easily receive less than its due. These contingencies do not alter the general statutory rule. The tax is laid upon the actual value of the estate. This is the value at the time when the estate vests. And a vested life estate passes when a testator dies, and its value is to be ascertained as of that date. Hertz v. Woodman, 218 U. S. 205, 30 Sup. Ct. 621, 54 L. Ed. 1001.

The clerk is directed to enter judgment in favor of the government for $527.86.