ST. LOUIS UNION TRUST CO. AND BETTIE B. BROWN, EXECUTORS, ESTATE OF GEORGE WARREN BROWN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12868. Promulgated January 16, 1931.

*Henry J. Richardson, Esq.,* for the petitioners.
*J. A. O'Callaghan, Esq.,* for the respondent.

OPINION.

MURDOCK: Section 403 (a) (3) of the Revenue Act of 1921 provides for the deduction from the gross estate of:

The amount of all bequests, legacies, devises, or transfers * * * to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia for exclusively public purposes, * * * or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual or to a trustee or trustees exclusively for such religious, charitable, scientific, literary or educational purposes. * * *

The decedent in this case, by his will, gave certain property to trustees to be devoted, using his own words, " to such benevolent purposes as in their opinion will constitute a fitting testimonial or memorial for me and in some degree extend my usefulness and helpfulness to others." The respondent contends that this language is too broad to entitle the estate to deduct the value of the property so bequeathed under section 403 (a) (3), i. e., that the language of the will does not limit the bequests to the trustees exclusively for such religious, charitable, scientific, literary or educational purposes as are mentioned in section 403 (a) (3). He claims that the property might, in accordance with the will, be devoted to benevolent purposes which were not exclusively religious, charitable, scientific, literary, or educational, and that there is no limitation in the other words in the particular clause of the will, in the will considered as a whole, or elsewhere which would be or which should for present purposes be considered binding upon the trustees so that they must devote the fund exclusively to religious, charitable, scientific, literary or educational purposes within the meaning of section 403 (a) (3).

The petitioners, on the other hand, contend that under this clause of the will as read in connection with the other parts of the will, and in the light of the decedent's past life, there could be no benevolent purpose to which this fund could be devoted which in the opinion of the three trustees would constitute a fitting testimonial or memorial to the decedent and in some degree extend his usefulness

and helpfulness to others which would not be an exclusively religious, charitable, scientific, literary or educational purpose within the meaning of section 403 (a) (3).

In " Words and Phrases," 1st, 2nd and 3rd series, under the words " Benevolence " and " Benevolent " we get a summary of the interpretation of these words by courts in at least fifty cases. Most of the authorities examined have had to do with the question of the validity of charitable uses. Our question is a different but closely related one. Although many of these cases hold that if the words are used in conjunction with the words " charity ". or " charitable," or are in other ways limited by the context, they are to be considered synonymous with these latter words, yet the great weight of the authorities cited is to the effect that alone, the words have a significance broader than charity or charitable and also broader than religious, educational, literary, scientific, and charitable. See to the same effect American Law of Charities—Zollmann, sections 397 et seq. In *Bok* v. *McCaughn*, 42 Fed. (2d) 616, the court has apparently adopted a very broad definition of charity, but the Supreme Court cases cited in that decision are earlier cases than the case of *Jones* v. *Habersham*, 107 U. S. 174, hereinafter quoted. *Bok* v. *McCaughn*, *supra*, was followed by the District Court for the Western District of Pennsylvania in *Koehler* v. *Lewellan* 44 Fed. (2d) 654. The Fifth Circuit in reversing *Susan Young Eagan et al., Executors*, 17 B. T. A. 694, 43 Fed. (2d) 881, expressly refrained from deciding whether the word " charity " as used in the revenue act, was intended to have the broadest legal significance which might attach to it.

The following is a quotation from *New England Theosophical Corporation* v. *City of Boston*, 51 N. E. 456; 172 Mass. 60; 42 L. R. A. 281, which case is cited by Words and Phrases, 1st series, under " Benevolent."

The word " benevolent," may include purposes which may be deemed charitable by a court of equity, and it may also include " acts dictated by kindness, good will, or a disposition to do good, the objects of which have no relation to the promotion of education, learning, or religion, the relief of the needy, the sick, or the afflicted, the support of public works, or the relief of public burdens, and cannot be deemed 'charitable' in the technical or legal sense." *Chamberlain* v. *Stearns*, 111 Mass. 267. See also, *Massachusetts Society for Prevention of Cruelty to Animals* v. *Boston*, 142 Mass. 24, 6 N. E. 840.

The case of *Kelly* v. *Nichols*, 17 R. I. 306; 21 Atl. 906; 19 L. R. A. 413, which was a bill in equity to avoid a trust because not a charitable trust, was before the Supreme Court of Rhode Island. In its opinion the court points out at great length and with numerous examples the difference between benevolence and charity and the difference between " benevolent " and " charitable " or " religious." A study of this case is most instructive. The court held:

That this [a Quaker's bequest to trustees to provide hospitality for a certain class of traveling Friends] is a bequest merely for hospitality, and not a religious or charitable use. An expectation that this may result, in some indirect and indefinite way, to the benefit of a religious society, does not change its essential character, nor warrant our holding it to be a charity. There must be some limit in the interpretation of a trust, more definite than the fervid fancy of a judge.

The court said further:

We know of no definition of a legal charity more accurate, concise, and comprehensive than that given by Mr. Justice Gray in *Jackson* v. *Phillips*, 14 Allen, 539, 556: "A charity, in the legal sense, may be more fully defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion; by relieving their bodies from disease, suffering, or constraint; by assisting them to establish themselves in life; or by erecting or maintaining public building or works, or otherwise lessening the burden of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature." We do not see how it can be claimed that this gift falls within either of these divisions of a charity, without giving a wide range to the imagination, in the hope of drawing therefrom some ulterior and possibly resultant benefit, which the testator himself has not disclosed. Undoubtedly, if a general charitable interest be disclosed in the will, the gift will be supported, even though the particular mode of administering the trust pointed out by the testator may be ineffectual. But this general intent is to be found in the will itself.

The Supreme Court of the United States in *Jones* v. *Habersham*, *supra*, held:

The fact that the gift to the Widow's Society is directed "to be appropriated to the benevolent purposes of said society" does not affect its validity, because the charter of the society shows that all of its purposes are charitable, in the legal sense. It is only when a gift might be applied to benevolent purposes which are not charitable in that sense, that the gift fails. *Saltonstall* v. *Sanders*, 11 Allen (Mass.) 446; *Suter* v. *Hilliard*, 132 Mass. 412; *De Camp* v. *Dobbins*, 29 N. J. Eq. 36; *Adye* v. *Smith*, 44 Conn. 60; *In re Jarman's Estate*, 8 Ch. D. 584.

"While no absolute or exhaustive definition of either charity or benevolence has ever been formulated, and while the distinction between them is shadowy and evanescent, it can confidently be stated that benevolence covers more ground than charity. Though every charitable purpose is benevolent, not every benevolent purpose is charitable." American Law of Charities—Zollmann, sec. 398. See also *First National Bank of Dallas* v. *Commissioner*, 45 Fed. (2d) 509.

Any acts of kindness, of friendship, of forethought, of good will, or for the general good or to promote the prosperity or happiness of mankind are benevolent. The word refers to the kind intentions of the donor rather than to the condition of the donee. "Gratuitous

aid to the needy is charity, but the same thing for those not needy is benevolence." *Kelly* v. *Nichols, supra.*

Congress has seen fit to use the word "exclusively" in the provision of the Act under which the petitioners claim. The compelling effect of this word is to deny a deduction for a bequest which, while possibly intended or tending to promote charity, religion, education, science or literature, is not limited exclusively to such purposes. *Susan Young Eagan et al., Executors, supra.* It has frequently been held in connection with charitable uses that if a bequest can, consistently with the will, be applied by the trustee in his discretion to other than charitable uses, the bequest is invalid, *Pell* v. *Mercer,* 14 R. I. 412; American Law of Charities—Zollmann, secs. 394 and 396; similarly here, if the bequest can, consistently with the will, be applied to other purposes than such religious, charitable, scientific, literary or educational purposes as are meant by section 403 (a) (3), or can be applied partly to other purposes, there can be no deduction under this section. What the trustees actually did under the will is not determinative of the petitioner's right to the deduction. Cf. American Law of Charities—Zollmann, sec. 396; *Ithaca Trust Co.* v. *United States,* 279 U. S. 151; *United States* v. *Farr's Executor,* 196 Fed. 996; *Moorman Home for Women* v. *United States,* 42 Fed. (2d) 257; *Frederic C. Leubuscher, Executor,* 21 B. T. A. 1022.

We have carefully examined the petitioner's will to arrive at his intention. We have not overlooked the character of the man as manifested in the disposition of his property. He made many gifts to educational institutions, many to charities, and was generous in his support of various activities of the Methodist Episcopal Church. He undoubtedly wanted particularly to help young people. Yet it is entirely consistent with all that we know of him to believe that in his rather lengthy will be specifically remembered all of the religious, charitable or educational organizations to which he definitely knew he wanted to devote some of his estate, and that he deliberately broadened the scope of the bequest now in question by allowing the trustees, in whom he had absolute confidence, the whole field of benevolence rather than limiting them to charity, religion, or education.

It is our opinion that the trustees here might have followed the terms of the will, as explained by the context and by the will as a whole, and not have devoted one cent of the bequest to purposes exclusively religious, charitable, scientific, literary, or educational. No great ingenuity is required to suggest a few ways in which they might have done this, although for our purpose it is enough to know that the provisions of the will are broader than the language used in the Act to describe the deduction. They could have provided a golf course open to all upon payment of a few cents a round, other

kinds of parks for games and pleasures, a house providing free room and board for all ministers visiting St. Louis, free picnics for the Sunday school children, a Christmas tree and presents for all the children in St. Louis, motor cars for all bishops of the Methodist Episcopal Church so that they could enjoy their leisure and through expedition extend their labors, and thus fully have complied with the will in ways that only indirectly, remotely, or inconsequentially would have affected religion and the other favored objects of the law indicated by this section of the Revenue Act. For other and perhaps better examples see *Kelly* v. *Nichols, supra; Livesey* v. *Jones*, 55 N. J. Eq. 204; 35 Atl. 1064 (affd., 41 Atl. 1115); and American Law of Charities—Zollmann, sec. 395. All of these acts would have directly fulfilled a benevolent purpose and, so far as we can judge from the will, would have constituted a fitting testimonial or memorial for the decedent and would have extended his usefulness and helpfulness to others. Furthermore, nothing in the case indicates that the trustees might not have been of this same opinion.

An easy solution of this case would be to hold that it is like *Ithaca Trust Co.* v. *United States, supra; First National Bank of Birmingham* v. *Snead*, 24 Fed. (2d) 186; *Hartford-Connecticut Trust Co.* v. *Eaton*, 36 Fed. (2d) 710; *Herron* v. *Heiner*, 24 Fed. (2d) 745; *Mercantile Trust Co., Executor*, 13 B. T. A. 85; affd., 43 Fed. (2d) 39; and *Boston Safe Deposit & Trust Co. et al., Executors of Wilder*, 20 B. T. A. 1159, but in our opinion it must be distinguished from such cases. In all of those cases the charities were sure to get something, and although the amount was somewhat uncertain, the contingency was fixed in fact and capable of being stated in terms of money. Here, charity might get nothing. Everything depended upon the discretion of the trustees exercised in accordance with the will. There was no way of looking into the human mind to see what would be done with the fund in this case. This contingency could not be stated in terms of money. *Humes* v. *United States*, 276 U. S. 487. Cf. *Reynolds D. Brown, Administrator*, 20 B. T. A. 47.

We are conscious of the fact that Congress undoubtedly intended to encourage bequests for the purposes mentioned in the Act and we do not want to be narrow in our construction of the Act, yet its plain words must govern, and for us to enlarge the class of deductions merely because the present case presents a difficult and close question would be quite out of place. Cf. *Crooks* v. *Harrelson*, 282 U. S. 55.

Next, we must consider whether or not the petitioners are entitled to deduct the full amount of $66,000 which represented the value of 750 shares of preferred stock of the Brown Shoe Co. In deciding this question we must examine the sixth article of the decedent's will to see whether or not he gave these shares of stock to or for the use

of a corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to a trustee or trustees exclusively for such religious, charitable, scientific, literary, or educational purposes. In making this examination, we must take ourselves back to the time of the decedent's death, for the fact that the trustees actually gave the property to the church is not decisive of our question. *Ithaca Trust Co.* v. *United States, supra; United States* v. *Farr's Executor, supra; Moorman Home for Women* v. *United States, supra.*

The petitioners have made no proof of values. That is, they do not attempt to separately value, at the time of the testator's death, the bequest of the income and the bequest of the corpus. Therefore, if there be any distinction between these two things for present purposes, and if one be deductible and the other not, we nevertheless can give the petitioners no relief.

The testator gave the stock to trustees to be held by them for a period which might be as long as ten years and, while they so held the shares, to pay over the income to the church upon certain conditions, and finally to deliver the shares either to the church, or in case the church had failed to meet the conditions prescribed, to the George Warren Brown Fund.

Under the provisions of section 403 (a) (3), if a testator makes a bequest to trustees, it must be *exclusively* for religious, charitable, scientific, literary, or educational purposes. Thus, if he made a bequest to trustees which they are to use for religious purposes only in case certain events happen, but which they are to use for other purposes if those events do not happen, it can not be said that the bequest was to trustees exclusively for religious purposes. Such is the effect of the word " exclusively " in the provision relating to bequests to trustees. The provision of the same section of the Act as it relates to bequests to corporations is somewhat different because there the word " exclusively " only modifies the purposes for which the corporation is organized and operated, and yet we believe that under this provision, if the bequest to the corporation be as contingent and uncertain as the bequest in this case, then no deduction is allowed by the Act, because at the time the testator died it was impossible to say whether he had made a bequest to the church, and in view of our holding in the petitioner's first allegation of error, it was impossible to say that, whether the church would receive the money or whether it would go to the George Warren Brown Fund, in either event the bequest would go to such purpose as would under section 403 (a) (3) entitle the estate to the deduction.

Thus, the question is the same as it would be had the testator left the property in trust to accumulate the income for ten years and at the end of ten years to pay the entire fund over to the church,

in case it had met certain conditions, or in case it had not met the conditions, to pay the entire amount to the testator's wife or her heirs at law. The bequest of the corpus to the church was upon certain conditions, which might or might not be met. It is interesting to note in passing, that these conditions were conditions precedent to the vesting of an estate in the corpus of the fund in the church. It is apparent that the testator intended the bequest to the church to be contingent, and it is our opinion that the estate is not entitled to a deduction under section 403 (a) (3). See *Humes* v. *United States, supra; George E. Farrington et al., Executors of Hollis*, 13 B. T. A. 274; affd., 30 Fed. (2d) 915; certiorari denied, 279 U. S. 873. In *Reynolds D. Brown, Administrator, supra*, upon the death of the testator, there was a bequest of $18,750 to St. Ann's Protestant Episcopal Church. That bequest was not to trustees, but was to the corporation itself, and the conditions attached were conditions subsequent. In the present case the bequest was to trustees and the conditions were conditions precedent. These facts distinguished the two cases on these particular points.

In support of their third assignment of error, the petitioners call our attention to the Revised Statutes of Missouri, 1919, which provide as follows:

SEC. 319. *Share of widow or widower in personal estate.*—When the husband or wife shall die leaving a child or children or other descendants, the widow or widower shall be entitled absolutely to a share in the personal estate belonging to the husband or wife at the time of his or her death, equal to the share of a child of such deceased husband or wife.

They then contend that we are bound by the decisions of the highest court in Missouri as to the nature of the interest of the widow under this section, which decisions are to the effect that the widow does not take this interest under the will, but in spite of it, and not under the intestate laws, but on the contrary she has certain inchoate rights in her husband's property by virtue of the marriage relation which came to her, whether the husband died testate or intestate, neither by inheritance nor as a distribution of part of the husband's estate, but which became consummate upon his death. They cite *In re Rogers Estate*, 250 S. W. 576; *In re Sanford's Estate*, 91 Neb. 752, which latter case cited the former with approval, and *In re Strahan*, 93 Neb. 833; 142 N. W. 680, cited and quoted in the *Rogers* case, *supra*. These cases support the above stated contention of the petitioners and hold that the property coming to the widow is similar to dower and is not subject to State inheritance tax. The petitioners then urge that as section 401 of the Revenue Act of 1921 imposes the tax " upon the transfer of the net estate of every decedent " there is no tax here, for nothing was transferred, citing *Nichols* v. *Coolidge*, 274 U. S. 531; *Munroe* v. *United States*, 10 Fed. (2d) 230; *Hibbard* v.

*Crooks*, 25 Fed. (2d) 896; *Krug* v. *Allen* (U. S. Dist. Ct., Dist. of Nebr.), C. C. H. Standard Service, 1928, D–8317.

The petitioners seem to contend that the laws of Missouri are substantially the same as those of Nebraska in this connection. So far as we can see, these laws are substantially the same. Cf. *Wilhite* v. *United States*, 67 Ct. Cls. 290; certiorari denied, 280 U. S. 555. The two States are both in the Eighth Circuit. Appeal in this case would lie to the United States Circuit Court of Appeals for the Eighth Circuit, which has held, in *Allen* v. *Henggeler*, 32 Fed. (2d) 69; certiorari denied, 280 U. S. 72A, where a similar contention in regard to the estate of a Nebraska decedent is fully discussed, that a widow's one-third share of her deceased husband's estate set apart to her by Nebraska statutes is properly included in his gross estate under section 302 of the Revenue Act of 1924, and, further, that the pertinent provisions of the Act are not unconstitutional. That case was followed by the same court in *United States* v. *Dietz*, 33 Fed. (2d) 576. See also, as to a Nebraska estate, *Nyberg* v. *United States*, 66 Ct. Cls. 153; certiorari denied, 278 U. S. 646, and *Wilhite* v. *United States*, *supra*, which latter follows the *Nyberg* case and holds that the widow's child's share in the deceased husband's estate, under the Missouri law, is properly a part of the gross estate of the husband for Federal estate-tax purposes. Cf. *United States* v. *Robbins*, 269 U. S. 315; *Tyler* v. *United States*, 33 Fed. (2d) 724; *Schuette* v. *Bowers*, 32 Fed. (2d) 817; *Mercantile Trust Co. Executor*, *supra*; *Crooks* v. *Loose*, 36 Fed. (2d) 571. We hold, following *Allen* v. *Henggeler*, *supra*, that the Commissioner did not err in including the value of the wife's child's share in the gross estate, and that the provisions of the Act are not unconstitutional.

The same question here raised in the fourth assignment of error was decided by the Supreme Court in *Crooks* v. *Harrelson*, *supra*. The Commissioner erred in including the value of the decedent's real estate in the computation of the gross estate.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

SMITH, dissenting: I dissent from so much of the opinion of the Board as disallows the deduction from the gross estate of $517,231.61 representing the residuary bequest to testamentary trustees to be used by those trustees for the purposes stated in the will of the decedent and in disallowing the deduction from the gross estate of $66,000, representing the value of 750 shares of stock bequeathed to the Union Methodist Episcopal Church. The deductions are disallowed upon the ground that the bequests by possibility might be used for benevolent purposes as distinguished from charitable purposes. The benefi-

cent purposes of Congress (cf. *Lederer* v. *Stockton*, 260 U. S. 3) in permitting the deduction from the gross estate of bequests for charitable purposes should not be defeated by such a narrow construction of the taxing act. The income and principal of the George Warren Fund was to be devoted by the trustees—

to such benevolent purposes, as in their [trustees'] opinion, will constitute a fitting testimonial or memorial for me, and in some degree, extend my usefulness and helpfulness to others.

The trustees actually distributed the money to exclusively educational and charitable institutions. In my opinion the amounts are legal deductions from the gross estate. Cf. *Eagan* v. *Commissioner*, 43 Fed. (2d) 881, and *Union & New Haven Trust Co.* v. *Eaton*, 20 Fed. (2d) 419.