WILLIAM J. ROTCH & others, executors, *vs.* GEORGE B. EMERSON & others.

A bequest to trustees of a sum "to be by them applied for the promotion of agricultural or horticultural improvements, or other philosophical or philanthropic purposes, at their discretion," is a good charitable bequest.

A testator, in his will, directed the residue of his estate to be divided, "as fast as the net income or proceeds thereof should be realized," into twenty-four parts; and gave legacies of twenty-fourth parts to various persons, but provided that certain of them "should in no case be entitled to claim or receive from my residuary estate a sum greater than $25,000 for every one twenty-fourth part." At the time of his death a twenty-fourth part of the residue greatly exceeded $25,000; and the residue was afterwards largely increased by the receipt of income. *Held*, that the legatees whose share was limited to $25,000 were entitled only to $25,000 and interest thereon after the expiration of one year from the death of the testator.

BILL IN EQUITY, filed August 17, 1870, by the executors of the will of James Arnold, praying for instructions. The case, as it appeared from the bill and answers, on which it was reserved for the determination of the full court, was as follows :

The testator died December 3, 1868, leaving a will by which he gave a certain sum "to George B. Emerson, John J. Dixwell and Francis E. Parker, in trust, to be by them applied for the promotion of agricultural or horticultural improvements, or other philosophical or philanthropic purposes, at their discretion, and to provide for the continuance of this trust hereafter to such persons, and on such conditions, as they, or a majority of them, may deem proper to carry out the intention of the donor."

He gave the residue of his estate to his executors "in trust for the purposes following : The same to be divided, as fast as the net income or proceeds thereof shall be realized, into twenty-four parts, and to be distributed to and among the following persons," naming more than thirty persons to whom he gave legacies of twenty-fourth parts and fractions of twenty-fourth parts of said residue, and concluding the residuary gift thus : " The last named devisees, eighteen in number, shall in no case be entitled to claim or receive from my residuary estate a sum greater than $25,000 for every one twenty-fourth part, or in that ratio, for the bequest to them."

At the time of the testator's death one twenty-fourth part of the residue was more than $50,000 ; and the residue was afterwards much increased by the receipt of net income, earnings and proceeds, by the executors.

The instructions prayed for were, as to the validity of the gift to Emerson, Dixwell and Parker, as trustees, for a charity ; and as to whether said last named eighteen devisees " are now entitled only to the gross total amount of $25,000, or to that sum and accumulated earnings, receipts and income thereof from the time said principal might have been divided and paid the full sum of $25,000 for each twenty-fourth part as aforesaid, to wit, the death of said testator, or what the true interests and rights of said legatees are in said residue."

*E. R. Hoar*, (*E. H. Bennett* with him,) for Emerson, Dixwell and Parker, as trustees, and for Dixwell as one of the eighteen devisees.

*B. F. Thomas*, (*T. M. Stetson* with him,) for other defendants.

WELLS, J. 1. The gift to trustees, " to be by them applied for the promotion of agricultural or horticultural improvements, or other philosophical or philanthropic purposes at their discretion," can be sustained only as a charitable bequest. What constitutes a charity, in a legal sense, has been so fully considered in several recent cases as to leave no occasion for further discussion at this time. *Odell* v. *Odell*, 10 Allen, 1. *Drury* v. *Natick*, 10 Allen, 169. *Saltonstall* v. *Sanders*, 11 Allen, 446. *Jackson* v. *Phillips*, 14 Allen, 539. The question to be decided in the present case is,

whether the testator, in declaring the purposes of this trust, has used terms which, when properly interpreted, define a charity in accordance with the principles established in those cases.

One rule of interpretation is, that it shall be favorable to the support of the will; so that if the words used are capable of either of two significations, in one of which they may take effect, while the other, if adopted, will render the bequest illegal or inoperative for any cause, the former is assumed to be according to the intention of the testator.

Another is, that the terms used are not to be measured separately, but each is to be considered in its relation to the entire provision, and the general meaning of each restricted by its associations, and made subordinate to the main purpose.

A third is, that, if the main purpose is apparent, to institute or endow a charity, it will not fail by reason of a want of definiteness in the specification of the objects towards which its benefits are to be directed.

But the power of the court to administer the trust and direct its objects must find its warrant in the intentions of the testator as expressed in the will. If those, upon a fair and reasonable interpretation, include what is not a charity, the court cannot, by its power of administration, exclude it; but the whole must fall. The bequest must be limited to the purposes of a charity by interpretation, if at all; and not by the power of the court over it after the trust is established.

Applying these rules, we do not find in the terms of this bequest any indication of intention in the testator inconsistent with the constitution of a charity in its strict legal sense. " Other philosophical or philanthropic purposes " indicates that the purposes previously named are not dissimilar in character. We must infer, therefore, that by the " promotion of agricultural or horticultural improvements," the testator had in his mind the acquisition and dissemination of knowledge, the study and inculcation of principles affecting those departments of industry, or of sciences relating thereto. On the other hand " philosophical purposes," applying the well known maxim *noscitur a sociis*, must be under

stood as referring to practical and useful sciences, and not to those which are abstract, speculative or metaphysical merely. "Philanthropic" is not in itself widely variant from "charitable." The rule of interpretation which may restrict "benevolence" to the sense of a legal charity, is equally applicable here. *Saltonstall* v. *Sanders*, 11 Allen, 446.

It is argued that the bequest is void, because it leaves to the trustees an unlimited choice of ends and means. But the terms of the bequest having been construed by the court as comprehending a charity only, the administration of the trust will be limited accordingly; because such is found and declared to be the will of the testator. Within that limit, the will may lawfully confer unlimited discretion upon the trustees; as it does in this case, except so far as a further limit is indicated by the general nature of the purposes specified. This bequest is therefore upheld by the court as a public charity.

2. The only remaining question for our decision is, whether certain shares in the residue of the estate, which are limited by the testator so as in no case to exceed twenty-five thousand dollars each, are entitled to participate in the general income received by the executors from the investments of the estate, or to draw interest only. The gross amount of residue is more than sufficient to meet the limit.

We think it clear that in such case the legacy becomes an absolute one for the amount named, with all the incidents attaching to legacies of definite sums. The testator provided two measures, by means of which his executors were to ascertain the amount of his intended bounty to these legatees. They were to take a proportionate share in the entire residue only in a contingency which has not occurred. It is true that their legacies became vested at once upon the death of the testator, and they constituted an interest in the residuary estate; but it was subject to the contingency which might limit that interest as well in respect of the income as of the principal. The event having limited their interests to a fixed sum, there is no relation of proportion to the whole estate upon which their claim to share in the income can be supported. These legacies must therefore fall

under the general rule, which gives interest from the time when they became due and payable; that is, one year from the death of the testator. *Instructions accordingly.*