MASSACHUSETTS SOCIETY FOR THE PREVENTION OF CRUELTY
TO ANIMALS *vs.* CITY OF BOSTON.

Suffolk.    March 10. — May 11, 1886.    MORTON, C. J., did not sit.
W. ALLEN & HOLMES, JJ., absent.

By the St. of 1868, *c.* 81, certain persons were incorporated as the " Massachusetts Society for the Prevention of Cruelty to Animals ; " but the objects and purposes were not defined otherwise than by the title of the act. By the St. of 1868, *c.* 212, § 8, reënacted in the St. of 1869, *c.* 344, § 7, all fines collected upon the complaint or information of any officer or agent of the corporation under that statute are to be paid over to the corporation " in aid of the benevolent objects for which it was incorporated." The methods adopted by the corporation are the gratuitous dissemination of papers and essays, and the delivery of free lectures, setting forth the proper treatment of animals ; the organization of societies whose members are pledged to the prevention of cruelty to animals ; the employment of agents to aid in enforcing the laws upon the subject ; and the erection and maintenance of a free hospital for homeless, neglected, diseased, or abused animals, where they may be kindly cared for or humanely disposed of. *Held*, that the corporation was a " benevolent " and " charitable " institution, within the Pub. Sts. *c.* 11, § 5, *cl.* 3, exempting the property of such institutions from taxation.

CONTRACT to recover the amount of a tax assessed upon real estate of the plaintiff for the year 1884, and paid under protest. The case was submitted to the Superior Court, and, after judgment for the plaintiff, to this court, on appeal, upon agreed facts, in substance as follows:

On May 1, 1884, the plaintiff corporation owned about an acre of land situated in Boston, which was acquired by it on May 29, 1883, for the purpose of erecting and maintaining a free hospital or sheltering home for homeless, neglected, diseased, or abused animals, where they might be kindly cared for or humanely disposed of. With money given it for the same purpose, it commenced later on in the same year, as soon as the necessary plans and arrangements could be made, the erection of the buildings aforesaid. On May 1, 1884, the work of erecting these buildings had been and was being diligently prosecuted by the corporation. The real estate was worth about $10,000, and on May 1, 1884, was all the real estate owned by the corporation, and was all for the use of the hospital, and necessary therefor, and intended for no other purpose.

On May 1, 1884, the defendant city assessed to the plaintiff upon said real estate a tax for the year 1884 of $193.80, which, with the interest and costs, amounting to $3.48, the plaintiff paid to said defendant, after summons, upon written protest, and was the whole tax assessed to the corporation by the defendant for that year.

The plaintiff was incorporated by the St. of 1868, *c.* 81. Its purpose, as set forth in its constitution, is "to provide effective means for the prevention of cruelty to animals, throughout the Commonwealth and elsewhere." The members of the society do not derive any pecuniary benefit from their membership, but all the means of said society are expended in furthering the purpose aforesaid.

The plaintiff employs agents who devote their time and attention to the prosecution of persons found treating animals contrary to the laws of the Commonwealth.

The plaintiff prints and circulates gratuitously about one hundred thousand copies annually of a paper entitled "Our Dumb Animals," devoted to setting forth proper treatment of animals, and inciting its readers, by illustration and argument,

to such treatment; and has printed and distributed gratuitously about two hundred thousand copies of essays upon different subjects, treating of methods for the proper and humane treatment of animals under all conditions.

The plaintiff has, by its officers and agents, delivered many free addresses, and given much personal advice on subjects connected with the humane and proper treatment of animals; and has awarded prizes for inventions for the relief of animals from suffering, and keeps specimens and models of such inventions on exhibition, but does not deal in or sell any such articles.

The plaintiff, at the centennial exhibition in Philadelphia, in 1876, secured a space in said exhibition, and exhibited a great number of models and specimens of the above inventions; and has, by its officers, organized about five thousand associations, which have about three hundred thousand members pledged to the prevention of cruelty to animals.

The plaintiff, on June 27, 1884, duly filed with the assessors of the defendant city, in full accordance with the requirements of the St. of 1882, c. 217, a true list of all the real and personal estate held by it on the first day of May, 1884, for literary, benevolent, charitable, or scientific purposes, and also a true statement of the amounts of all receipts and expenditures by it for said purposes during the year next preceding said first day of May; said list and statement being in such detail as was required by the tax commissioner.

*F. Brewster*, for the plaintiff.

*A. J. Bailey*, for the defendant.

DEVENS, J. As the plaintiff paid the tax assessed upon its real estate under such circumstances that it is entitled to recover it back if wrongfully assessed, the only question is whether the plaintiff corporation is one of the institutions described in the Pub. Sts. c. 11, § 5, cl. 3, as " literary, benevolent, charitable, and scientific institutions incorporated within this Commonwealth." The institution was incorporated by the St. of 1868, c. 81, by the name of the Massachusetts Society for the Prevention of Cruelty to Animals. Its objects and purposes were not more specifically defined than by its title, nor was any mode of accomplishing them pointed out. The methods adopted, by the dissemination of papers and essays, by lectures

inculcating not only the duty of humanity to, but the proper mode of dealing with and treating, the domestic animals and their diseases, by organizing societies of members pledged to aid in the prevention of cruelty to them, and by the employment of agents to aid in enforcing the laws on this subject, are legitimate means of effecting the general object indicated by its name. The society is also engaged in erecting and maintaining a hospital for homeless, neglected, and abused animals, where they may be kindly sheltered or humanely disposed of, which is also an appropriate mode of aiding in the prevention of cruelty to them. The act of incorporation must have contemplated all the legitimate and appropriate means of effecting this object, which were of a general character, and capable of influencing the public.

The society may be properly defined as both benevolent and charitable. By the St. of 1868, c. 212, § 8, all fines collected upon "the complaint or information of any officer or agent of the Massachusetts Society for the Prevention of Cruelty to Animals, under this act, shall inure and be paid over to said society in aid of the benevolent objects for which it was incorporated." The same section is reënacted in the St. of 1869, c. 344, § 7. In terms, therefore, the Legislature has recognized the objects of the society as "benevolent."

Without discussing the question whether the word "benevolent" is used as substantially synonymous with "charitable," or disjunctively, we are of opinion that the society also comes within the definition of a charity. There is no profit or pecuniary benefit in it for any of its members; its work, in the education of mankind in the proper treatment of domestic animals, is instruction in one of the duties incumbent on us as human beings. There are charitable societies whose objects are to bring mankind under the influences of humanity, education, and religion. *Jackson* v. *Phillips*, 14 Allen, 539. The hospital founded by the institution would, if it were established by a bequest, or public or private gift, be treated as a charity. It has a humane, legal, and public, or general purpose, and whether expressed or not in the St. of 43 Eliz. c. 4, which is the foundation of our law on the subject of charities, comes within the equity of that statute. *Cresson's appeal*, 30 Penn. St. 437.

*Townley* v. *Bedwell*, 6 Ves. 194.    *Faversham* v. *Ryder*, 5 De G., M. & G. 350.

In the case of *University of London* v. *Yarrow*, 23 Beav. 159, it was held that a bequest for founding and upholding an institution for investigating, studying, and curing maladies of quadrupeds or birds useful to man, and for providing a super-intendent or professor to give free lectures to the public, was good as a charitable legacy; and that the fact that the testator showed some interest in the animals themselves and their hu-mane treatment in no way invalidated the gift.

The argument for the defendant is, that the passage of the general provision of the Rev. Sts. *c.* 7, § 5, *cl.* 2, reënacted in the Pub. Sts. *c.* 11, § 5, was intended to extend the exemption to the whole of the same class of institutions of which a por-tion was then exempted, and no further; and that the words " benevolent " and " charitable " must be construed as meaning benevolent and charitable in respect to human beings, such being the only kind incorporated in this Commonwealth before the Revised Statutes.*    But the intention of the statute was to extend the exemptions which then existed to all societies which are properly described by the words used, and an institution must be deemed both benevolent and charitable which educates men in the diseases of the domestic animals, and the proper mode of dealing with them, even if it also inculcates the duty of kindness and humanity to them, and provides appropriate means of discharging it.                    *Judgment affirmed.*

---

* The commissioners on the revision of 1836 proposed to exempt the property of the Massachusetts General Hospital, the Boston Athenæum, the Berkshire Medical Institution, Harvard College, Phillips Academy in Andover, and every academy incorporated under the authority of this Commonwealth.