THOMAS MINNS & another, executors, *vs.* FRANK S.
BILLINGS & another.

Suffolk.    January 5, 1903. — March 6, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND,
LORING, & BRALEY, JJ.

*Charity.    Boston Athenæum.    Boston Library Society.*

A trust fund, created and maintained by gifts, bequests and gratuities, entirely
within the control of the trustees, for the purpose of rendering charitable as-
sistance to sick and disabled members of an association of printers, of teachers,
or of bank officers, is a public charity.

A society for the prevention of cruelty to animals is a public charity. So is an
animal rescue league.

The Boston Athenæum, a corporation maintaining a large library accessible to in-
quirers and students as well as to its own members, and having the character-
istics described by the court, is a public charity. So is the Boston Library
Society, a similar corporation.

BILL IN EQUITY, filed June 3, 1902, by the surviving execu-
tors under the will of Robert C. Billings, late of Boston, for
instructions.

The case came on to be heard before *Hammond*, J., who by
agreement of parties and at the request of counsel reserved it
upon the bill and answers for determination by the full court.

The clause under which the executors acted, in making the
distribution of residue in regard to which they asked for instruc-
tions, was contained in the seventh and last codicil to the will,
dated February 6, 1899, and was as follows :

" Whereas by said will I provided that 'any sums still remain-
ing shall be disposed of by my executors, they using their best
judgment and taste in doing so' now in order that said chari-
table trust may not fail for want of definiteness or any other
cause I give all the rest residue and remainder of my estate to
my said executors and the survivors or survivor of them and to
his successor in trust nevertheless to apply the whole or any
part of the principal and income, in their discretion, to such
charitable purposes as to them, or the survivors or survivor of
them or any administrator with the will annexed shall seem

proper and for that purpose I give to them the widest discretion and request that no surety shall be required on any bond from them, or either of them — and that they may take all the time they please in disposing of said residue. My executors and trustees may in their discretion continue any investment made by me — and shall be responsible only for their wilful defaults."

The case was submitted on briefs at the sitting of the court in January, 1903, and afterwards was submitted on briefs to all the justices.

*Roland Gray*, for the Boston Athenæum.

*H. G. Denny*, for the Boston Library Society.

*L. Cushing & H. D. McLellan*, for the Animal Rescue League.

*S. C. Darling*, for the trustees of the Permanent Charity Fund of the Bank Officers' Association of the City of Boston.

*C. T. Gallagher*, for the Franklin Typographical Society.

*F. H. Nash*, Assistant Attorney General, for the Commonwealth.

KNOWLTON, C. J. The plaintiffs, surviving executors of the will of Robert C. Billings late of Boston, deceased, have received, under the will and the seventh codicil, all the rest, residue and remainder of his estate after paying legacies, in trust to apply the whole or any part of the principal and income "to such charitable purposes" as to them may seem proper. They propose to apply various sums from the fund in their hands to one hundred and twenty-six different objects and purposes which are set out in this bill, and they ask the instructions of the court as to whether some of these objects and purposes are "charitable purposes" within the meaning of the will and codicil. They state their intention in most cases to make the gifts to the institutions mentioned as a permanent fund in each case, the income only to be used for the general purposes of the institution. The next of kin and the attorney general have filed answers, and the attorney general has filed a brief. Some of the proposed beneficiaries have asked and been permitted to file briefs as *amici curiæ*.

Only a few of the proposed gifts have been called in question by the attorney general. The next of kin in his answer merely joins in the prayer of the bill. The other proposed gifts have

not received so extended an examination by the court as would have been thought necessary if objection or question had been made in regard to them by any party interested. We shall not discuss them any further than to say that, upon the statements contained in the bill, we see nothing to show that they may not all be treated as gifts to public charities under the liberal doctrines established by recent decisions of this court. We shall, therefore, assume that the particular facts in each case, taken in connection with the general facts stated in the bill, are such as to warrant the executors in making these institutions beneficiaries. The first class of beneficiaries referred to in the brief of the attorney general comprises three incorporated mutual benefit associations, and the question was raised whether money given to these associations would be held for a charitable use. The decisions in *Coe* v. *Washington Mills*, 149 Mass. 543, *Newcomb* v. *Boston Protective Department*, 151 Mass. 215, *Young Men's Protestant Temperance & Benevolent Society* v. *Fall River*, 160 Mass. 409, (see also *In re Clark's trust*, 1 Ch. D. 497; *Burke* v. *Roper*, 79 Ala. 138,) mark the distinction between public charities and mutual benefit associations supported by contributions or assessments from their members, whereby the members become entitled to certain benefits in case of sickness or accident, as a personal right. But the application of the principles stated in these cases is not required in considering these proposed gifts, because of amendments to the bill made since the brief was filed. Number seventy-eight of the proposed beneficiaries mentioned in the bill as amended is, "The trustees of the permanent fund of the Franklin Typographical Society, Boston, Mass. Trustees of a permanent fund which is derived solely from gifts and bequests, and is provided for the purpose of paying a death benefit and giving charitable assistance to sick, disabled, or dependent members of the Franklin Typographical Society, Boston, Mass., an incorporated mutual benefit association, their widows and orphans, and otherwise assisting needy persons in any way connected with the printing business, said fund being entirely within the control of its trustees, and solely applicable to such purposes." Number seventy-six is as follows: "The trustees of a permanent fund to be established for the purpose of giving charitable assistance to sick or disabled

members of the Boston Teachers' Mutual Benefit Association, Boston, Mass., an incorporated mutual benefit association; said fund to be entirely within the control of its trustees, and solely applicable to such purposes." Number seventy-seven is in similar terms, as follows: "The trustees of the permanent fund of the Bank Officers' Association of the city of Boston. Trustees of a permanent fund which is derived solely from gifts, bequests, honorary membership fees, and proceeds of entertainments, and is provided for the purpose of giving charitable assistance to sick or disabled members of the Bank Officers' Association of the city of Boston, an incorporated mutual benefit association, said fund being entirely within the control of its trustees and solely applicable to such purposes." In each of these cases the proposed transfer is to trustees of a fund created and maintained by gifts, bequests and gratuities, to be entirely within the control of the trustees, for the purpose of rendering charitable assistance to sick and disabled persons who are members of these associations, respectively, and to be used for no other purpose. Each of these funds so held and used has all the qualities of a public charity, unless the fact that in two of the organizations its benefits are limited to members of the association makes it a private instead of a public charity. But the trustees hold the legal title and control the fund. Its benefits are for all the members of a class. The class, in reference to the individuals who will belong to it as the years go by, is indefinite. The charity is bestowed upon all needy persons who at any time are included in the class. It appears that the class, in one case is open to all teachers in the public schools, in another to all printers, and in the third to all bank officers and bank clerks, in the city of Boston, who wish to be included in it. The class in each case is a large one. The relief of the necessities of all the members of one of these classes is an object so general and indefinite as to be deemed of common and public benefit, and so a public charity. That the money used comes from the bounty of the generous and is controlled by trustees acting as their representatives, fulfils one of the usual requirements of a public charity. We are of opinion that these gifts come within the authority conferred upon the executors by the will and codicil. *Saltonstall* v. *Sanders*, 11 Allen, 446, 455. *Washburn* v. *Sewall*, 9 Met. 280.

*Dexter* v. *Harvard College*, 176 Mass. 192.     *Duke* v. *Fuller*, 9 N. H. 536.     *Pease* v. *Pattinson*, 32 Ch. D. 154.

The next class referred to in the attorney general's brief includes two corporations, "The Massachusetts Society for the Prevention of Cruelty to Animals" and "The Animal Rescue League of Boston." The objects of these institutions are indicated by their corporate names, respectively, and are stated more at length in the bill. In *Bartlett, petitioner*, 163 Mass. 509, it was assumed, without discussion, that the first of these two corporations was a public charity, and the decisions in England in reference to objects like those of these two corporations are to the same effect. *Obert* v. *Barrow*, 35 Ch. D. 472. *Mitford* v. *Reynolds*, 1 Phillips, 185. *University of London* v. *Yarrow*, 1 DeG. & J. 72. *Tatham* v. *Drummond*, 34 L. J. Ch. (N. S.) 1. *In re Douglas*, 35 Ch. D. 472. We are of opinion that the proposed gifts to these corporations are legal and proper.

Number one hundred and nine of the proposed beneficiaries is, "The proprietors of the Boston Athenæum, Boston, Mass.," a corporation established by the St. of 1806, c. 42, for the expressed purpose of maintaining a "valuable and extensive collection of such rare and valuable works, in ancient and modern languages, as are not usually to be met with in our country, but which are deemed indispensable to those who would perfect themselves in the sciences"; and for the purpose of forming "a museum of natural and artificial curiosities and productions, scientifically arranged.; also, an apparatus for the performance of experiments in the various branches of natural philosophy, and for geographical improvements, as well as a repository for models of new and useful machines, and of statues, paintings, and other objects of the fine arts, more especially of our native artists; for which important objects no adequate provision has hitherto been made or formed within this Commonwealth, although similar establishments have long since partially existed in many of our sister States." The statements of the amended bill give us additional facts in regard to the management of the institution in detail.

The objects of the corporation are in a broad and liberal sense and in a high degree educational. The only question raised is whether this is a private institution, conducted for the benefit

of its members, or whether its objects are general and public, such that either the whole public, or a class or classes indefinite as to numbers representing the public, share in its benefits. The preamble of the statute, from which we have quoted above, indicates that the Legislature treated it as a matter of public importance and not as a private enterprise. The commissioners who compiled the laws of the Commonwealth in conformity with a resolution passed February 22, 1822, of whom Lemuel Shaw was one, published it among the general and public laws and not among the special laws. Section five of the act provides that the governor, the lieutenant governor, the members of the council, of the senate, and of the house of representatives for the time being, shall have free access to the library, museum, and repository of the fine arts of the corporation. It also gives the Commonwealth, through the Legislature, by a committee or committees, visitatorial power to examine the affairs of the corporation. The public officers referred to represent a considerable class of the public. The visitatorial power in itself shows that, by the statute, the corporation is treated as a public charity. It appears by the bill that there are ten hundred and forty-nine shares of stock, each one of which entitles its owner, and the members of his household, and two other persons designated by him, to all the privileges of the library. He also may introduce any number of strangers not residing within twenty miles of Boston, who are entitled to use the library for thirty days. These shares are freely transferred without the assent of any person but the owners, are quoted in the regular stock market lists, and any one wishing to obtain a share can always obtain one within one or two weeks. The corporation maintains an extensive library, containing many rare and valuable books not to be found elsewhere in the neighborhood of Boston. The corporation owns many valuable works of art which formerly were regularly exhibited to the public at the Athenæum building, and the most important of which are now kept on exhibition at the museum of fine arts in Boston, where they are frequently exhibited to the public, free of charge.

The corporation receives from the government of the Commonwealth, and from the government of the United States, the regular official governmental publications. It treats these pub-

lications as open to the inspection of any citizens, as a matter of right. The institution is conducted with great liberality with reference to allowing the use of the library to inquirers and students without payment, and in lending books to such persons, and in assisting them. It also conducts a system of inter-library book lending, by which books are lent to various colleges, and books in turn are borrowed from them. From one half to one third of the time of the employees of the library who are occupied in assisting and furnishing information to readers is taken up by persons who are not proprietors, or authorized by proprietors to use the library on their shares.

Many funds have been bequeathed by will or donated to the corporation from time to time, some of them of large amounts.

Upon these facts we are of opinion that the Boston Athenæum, in its organization and its management, is not for the private benefit of its individual members alone, but in large part is for the public. Most of its advantages may be enjoyed by any person whose taste and education enable him to find pleasure and profit in the use of them. It is an important educational institution in a field of its own, established and fostered by the Commonwealth for the public good. That the shareholders, by their investment, contribute to the cost of its maintenance, and have greater opportunities than others for the enjoyment of its privileges, does not deprive it of the characteristics of a public charity, which pertain to it in its broader and more general relations. We are of opinion that a gift may be made to this institution, as proposed by the trustees. See *Dexter* v. *Harvard College*, 176 Mass. 192.

The next proposed beneficiary is, " The Boston Library Society, an institution similar in its scope and purpose to the Boston Athenæum." Upon this statement, which is all that is before us in regard to this corporation, that which we have said about the Boston Athenæum applies to the Boston Library Society also.

The plaintiffs are instructed that all of the proposed gifts appear to be within the authority conferred upon them by the will and codicil.

*So ordered.*