ROBERT S. MINOT & another, executors, *vs.* ATTORNEY
GENERAL & others.

Suffolk.    April 3, 1905. — September 11, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & BRALEY, JJ.

*Devise and Legacy.    Charity.    Trust.*

A will contained the following residuary clause: "I give and devise to my execu-
tors and the survivor of them, or whomsoever shall lawfully have the execution
of this my will, all the residue and remainder of my property and estate, to be
distributed by them to charitable or worthy objects, or such as I may designate
during my lifetime, and particularly for the purpose of giving to any relative of
mine, whom without apparent reason I may have overlooked, such sum as may
seem to them or him under all the circumstances fitting, suitable and proper.
But my said executors or executor shall have full discretion in the matter of
the distribution of said residue, and shall not be under any legal accountability
or subject to any trust, or be liable to any person or corporation by reason of
any memorandum which I may leave." *Held*, that it was the intention of the
testator to create a trust of some kind, and not to make an absolute gift to his
executors; that the trust could not be sustained as a charitable trust because it
included uses not charitable; and that it created no private trust because the
description of the intended beneficiaries was too indefinite; therefore that a
resulting trust arose in favor of the next of kin of the testator.

BILL IN EQUITY, filed December 9, 1904, by the executors
under the will of Joseph B. Glover, late of Boston, for in-
structions.

The case came on to be heard before *Hammond*, J. on the
facts alleged in the petition, which were admitted, and was re-
served by the justice on those facts for determination by the full
court, such order and decree to be made as justice and equity
might require.

The article of the will to be interpreted was as follows:

"Ninth. I give and devise to my executors and the survivor
of them, or whomsoever shall lawfully have the execution of
this my will, all the residue and remainder of my property and
estate, to be distributed by them to charitable or worthy objects,
or such as I may designate during my lifetime, and particularly
for the purpose of giving to any relative of mine, whom without
apparent reason I may have overlooked, such sum as may seem

to them or him under all the circumstances fitting, suitable and proper. But my said executors or executor shall have full discretion in the matter of the distribution of said residue, and shall not be under any legal accountability or subject to any trust, or be liable to any person or corporation by reason of any memorandum which I may leave ; but I direct them to pay out of such residue before distributing the same all legacy taxes, so that such of the legacies or bequests above given by me as are taxable shall be received by the beneficiaries free of tax."

*M. Williams*, for the executors in their individual capacities.

*R. T. Babson & W. E. Waterhouse*, for a niece of the testator.

*A. H. Latham*, for a grandniece of the testator.

BRALEY, J. Upon the final settlement of the testator's estate there will remain in the possession of the executors a large sum to be disposed of under the residuary clause of his will. The question presented for our decision is to whom shall it be paid.

We first consider the claim advanced by the executors, that as legatees they are entitled absolutely to the fund discharged from any trust. Though they are not referred to by name, the opening words of the clause would afford the semblance of a ground in support of this construction, if the language used remained unqualified by the context. But after vesting the title in them, its quality is materially affected by the positive direction that the property is " to be distributed by them ", which is wholly inconsistent with the purpose to give the residue to them for their own benefit. Nor is this purpose changed by the language employed in the second sentence, where the direction is found that in the contemplated distribution, the executors " shall not be under any legal accountability or subject to any trust, or be liable to any person or corporation by reason of any memorandum which I may leave."

The testator, by his will, disposed of what apparently was a large estate by making numerous pecuniary legacies to relatives and friends, as well as a large number of charitable bequests. It appears that an unsigned memorandum was left by him, which does not appear to have been in existence when the will was executed, nor identified as the paper to which he referred ; hence it cannot be admitted to probate, and in settling his estate must be wholly disregarded. *Newton* v. *Seaman's Friend*

*Society*, 130 Mass. 91, 93. It however may be observed that, on its face, it contains no provisions relating to the distribution of the residue, and there are no extraneous facts found in the record which would make any portion of it applicable.

It is suggested that, notwithstanding this, the language employed negatives the intention to create a trust, and therefore nothing is left for construction, leaving the executors to take as legatees for their own use and benefit.

But the words "by reason of any memorandum which I may leave", evidently refer to the antecedent clauses, and must be taken to mean that the full discretionary powers vested in them are not to be limited by the terms of any express trust, which otherwise might be claimed to have been created in favor of those named in his subsequent memorandum. The case of *Bacon* v. *Ransom*, 139 Mass. 117, upon which they rely, is plainly distinguishable.

Without adverting to the peculiar reasons for the form of bequest there used by the testatrix, it appears, that the gift was made absolute in terms. A request indeed followed that the fund might be used for advancing a political cause in which she was greatly interested, but the legatees were especially left free from any legal requirement to comply with her request.

This is distinctively different from a bequest to executors, or their successors in office, who are to use their discretion in the selection of those to be benefited by the testator's bounty; for when this has been done by them, distribution is to follow, not by a division between themselves, but among the persons or corporations selected.

For similar reasons, cases in which a testator, after making an unqualified bequest, has used precatory words, indicative of a desire that the legatees, though under no legal obligation, will apply some portion to the benefit of others in whom he is interested and to whom he may sustain paternal relations, are not applicable. See *Wells* v. *Doane*, 3 Gray, 201; *Hess* v. *Singler*, 114 Mass. 56; *Wells* v. *Hawes*, 122 Mass. 97; *Davis* v. *Mailey*, 134 Mass. 588; *Bacon* v. *Ransom*, 139 Mass. 117; *Sturgis* v. *Paine*, 146 Mass. 354; *Durant* v. *Smith*, 159 Mass. 229; *Aldrich* v. *Aldrich*, 172 Mass. 101.

To hold that there was an outright gift to the executors

would be repugnant to, and defeat, his declared purpose. It therefore must be held that it was the intention of the testator to create a trust in some form, and not to make an unlimited bequest to his executors. *Nichols* v. *Allen*, 130 Mass. 211, 213. *Olliffe* v. *Wells*, 130 Mass. 221. *Schouler, petitioner*, 134 Mass. 426. *White* v. *Ditson*, 140 Mass. 351, 353.

If a trust was created, it remains to consider whether, under its provisions, it can be executed either as a charity, or for the benefit of such private objects or persons as are capable of being clearly determined.

Among the accepted definitions of a charity is that given in *Jackson* v. *Phillips*, 14 Allen, 539, 556. This requires that the purpose shall be wholly charitable, or the gift is void. The form of language used is not material, if, from the words employed, the sole intention of the testator to establish a charitable trust clearly appears. *Jackson* v. *Phillips, ubi supra. Rotch* v. *Emerson*, 105 Mass. 431, 433.

A bequest to be devoted to the furtherance of such charitable objects as the executors might select, would be consistent with such general intention, and hence valid. *Weber* v. *Bryant,* 161 Mass. 400. *Minns* v. *Billings*, 183 Mass. 126.

It is possible, if the first sentence of this clause had stopped with the phrase " charitable or worthy objects ", that by construction, these words, as used by the testator, could be coupled so that they might be understood as used in a synonymous sense.

If this were done, then, under our construction, not being inconsistent with the second sentence, such an intention could be given effect as a public charity. And they might be construed to mean charitable and worthy objects, or charitable and deserving objects, either of which would be sufficient to sustain the gift. *Saltonstall* v. *Sanders*, 11 Allen, 446. *Rotch* v. *Emerson, ubi supra. Chamberlain* v. *Stearns*, 111 Mass. 267. *In re Sutton*, 28 Ch. D. 464.

But the discretionary power conferred is not confined to charity alone. It may be exercised for the benefit of such persons or corporations as may be selected by the executors or designated by the testator in his lifetime, though the recipients might not have been capable of classification as coming within the pro-

visions of the St. of 43 Eliz. c. 4, which has been followed in this Commonwealth, so far as to ascertain what shall be considered charitable gifts. *Sanderson* v. *White*, 18 Pick. 328, 333.

Although the testator may have intended by a memorandum to have named the " charitable or worthy objects " among which this portion of his estate was to be distributed, yet he went still further in the expression of his general design by declaring that the bequest also was " particularly for the purpose of giving to any relative of mine, whom without apparent reason I may have overlooked, such sum as may seem to them or him under all the circumstances fitting, suitable and proper."

It then fully appears that there also was in his mind, as of equal prominence, an intention plainly expressed to include certain of his relatives, though they may be indefinitely described. These several purposes were not charitable in a legal sense, and as the fund could be applied to either, as the executors might deem proper, there is no charitable trust created which under our decisions can be supported. *Nichols* v. *Allen, Chamberlain* v. *Stearns, ubi supra. St. Paul's Church* v. *Attorney General*, 164 Mass. 188, 195. See *Bullard* v. *Chandler*, 149 Mass. 532, 539.

That he intended to dispose of his entire estate may be presumed, and such an intention should be made effectual if possible. *Kenaday* v. *Sinnott*, 179 U. S. 606, 616. But there are insuperable difficulties in construing this clause in such a way as to create a private trust. There was no provision for the apportionment of the residuary fund between " charitable or worthy objects ", and the testator's relatives.

In order for a court of equity to administer a private trust, the objects to which it is to be applied, or the persons who are to take under it, must be capable of ascertainment. *Olliffe* v. *Wells, ubi supra.* If the court should attempt to make an arbitrary division between the three classes, it must override the discretion of the executors, and thus disregard the terms of the will. Unless this is done, no trust can be supported in favor of any of the objects specified, or class of persons named.

When an attempt is made to define the class of relatives intended, there is nothing disclosed by any extrinsic facts from which it can be determined that any of the testator's relatives whom he may have omitted were unintentionally overlooked.

If construed to mean relatives whom he may have forgotten, we are no nearer a definition, for there is no standard provided by him by which to ascertain how far he may have remembered and purposely omitted them, or, without such an intention, failed to recall them when making a testamentary disposition of his property.

Before any distribution could be made, the executors or the court would be called upon to decide, and must determine, not who were the testator's relatives at the time of his death, but what members of this class had been forgotten by him. Manifestly, this would be a practical impossibility.

He might have said any relative whom I may have omitted, and it may be that this could be held to mean those for whom he had not provided, but who, in the event of his intestacy, would have shared in the distribution of his estate, under R. L. c. 133.

Of course, under such a construction, those who were to take, could be readily determined; but his purpose evidently was not so broad, for he adds a limiting and discriminating phrase, " whom without apparent reason I may have overlooked."

While the general intention of the testator, that the residue of his estate should be held by the executors in trust, is fully apparent, the unfortunate terms he employed to express this permits the fund, as we have said, to be wholly applied for objects which are not charitable in law; or for purposes so uncertain as not to be capable of identification; or for the benefit of relatives not named, and who, by reason of the descriptive limitation imposed by him, cannot otherwise be ascertained.

The whole trust, therefore, becomes too indefinite for the court to administer, and a resulting trust must be decreed in favor of his next of kin, who thus become entitled to the residuary fund. *Chamberlain* v. *Stearns, Nichols* v. *Allen, Olliffe* v. *Wells, St. Paul's Church* v. *Attorney General, ubi supra. Wheeler* v. *Smith,* 9 How. 55, 79.

*Decree accordingly.*