MOLLY VARNUM CHAPTER, D. A. R. *vs.* CITY OF LOWELL.

Middlesex.    November 15, 16, 1909. — January 25, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Tax,* Exemption.    *Charity.*

In the determining of the question whether certain real estate owned and used by an incorporated local branch of an incorporated national society is exempt from taxation under R. L. c. 12, § 5, cl. 3, as real estate owned and occupied by an incorporated literary, benevolent, charitable or scientific institution and used by it for the purposes for which it was incorporated, the terms of incorporation of the national organization have no effect to enlarge the objects of the incorporated local branch as defined in its charter.

The charter of a corporation organized under R. L. c. 125, §§ 1–3, stated that it was incorporated " for the purpose of perpetuating the memory of the men and women who achieved American independence; of acquiring and protecting historic spots; encouraging historical research, and the publication of its results; preserving documents and relics and individual records of revolutionary soldiers and patriots and promoting the celebration of patriotic anniversaries; of cherishing, maintaining and extending the institutions of American freedom, and fostering true patriotism and love of country; also for the purpose of hold-

ing real estate so far only as may be necessary to its lawful ends." The corporation aided in soldiers' relief work and in the relief of suffering resulting from an earthquake in San Francisco, California, contributed to a fund for the education of Cuban teachers at Harvard College, made gifts of an historical nature to public schools, and assisted in making a high school building sanitary and artistic, assisted in the establishment of a public library and in the maintenance of a class in a boys' club for the learning of cane seating and of a sewing class among Greek girls, aided historical research, the preservation of historical sites and the inculcation of patriotism by the perpetuation of the memory of the men and women who were instrumental in achieving our national independence. In the doing of the foregoing work, it owned and occupied certain land and a house thereon, itself historical, which it used as a meeting place for its members, as a free public exhibition hall of historical things, and for lectures upon subjects kindred to the purposes of its incorporation for which an admission was charged and the net proceeds of which were devoted to maintenance of the house. Free use of the house was given for various charitable purposes, school children were entertained there, and patriotic exercises were held. The house also was let from time to time for a stipulated fee to persons giving entertainments, the fees thus obtained being used to defray the expenses of maintaining it. The only income which the corporation received outside of membership fees was from the use of the house. No part of the income was divided among the members or was used for other uses than those above recited. *Held,* that the house and land were exempt from taxation under R. L. c. 12, § 5, cl. 3, which so exempts real estate owned and occupied by incorporated literary, benevolent, charitable and scientific institutions and used by them for the purposes for which they are incorporated.

CONTRACT to recover the amount of a tax upon the "Spalding House," so called, in Lowell, which the plaintiff paid to the defendant under protest, asserting that the real estate was exempt from such taxation. Writ dated October 3, 1908.

The case was heard by *Bell,* J., upon an agreed statement of facts. From that statement the following facts appeared as well as those stated in the opinion :

"Molly Varnum Chapter, Daughters of the American Revolution, before and after its corporation . . . has done the following work : (1) The instituting and organizing by members of the chapter of a fête by which over $2,000 was raised for soldiers' relief work; (2) contributing money for organizing the Lowell Branch Massachusetts Volunteer Aid Association, to aid volunteers in the Spanish War; (3) contributing money to the Cuban teachers' fund at Harvard College; (4) contributing to the relief of suffering from the San Francisco earthquake; (5) contributing to the preservation of the Hancock-Clark house at Lexington, Massachusetts; (6) marking historic site at Chelmsford, Massachusetts; (7) appropriating money for

historic research by special committee and identifying historic places in Dracut, Chelmsford and Tewksbury and placing markers thereon; (8) assisting citizens of Dracut in establishing a Public Library, by contributing over four hundred volumes and compiling a complete list of the Dracut soldiers of the Revolution in a large book illuminated by a celebrated artist and paid for by money raised and contributed by the chapter; (9) collecting data relating to old towns about Lowell with a view to publication for use in schools; (10) assisting to place the hall of the Lowell High School in a proper condition as regards sanitation, cleanliness and artistic appearance; (11) contributing bas relief pictures, etc., to different schools in Lowell; (12) maintaining a class in cane seating at the Lowell Boys' Club with contributions of needed supplies; (13) maintaining a sewing class among Greek girls; (14) purchasing and preserving the 'Spalding House.' . . . The house, built about 1761, stood on land once known as the ' Wamesit Grant.' This grant was obtained in 1653 by the Rev. John Eliot for the sole use of the Wamesit or praying Indians. In 1726 it was sold to the citizens of Chelmsford and later incorporated in the city of Lowell. The house has been the property of five different soldiers of the Revolution, Andrew Fletcher, Joseph Tyler, Capt. John Ford, Moses Davis and Joel Spalding. The latter purchased it in 1790 and it remained in the Spalding family from then until its purchase by the plaintiff corporation. During the ownership of Moses Davis the house was used as a tavern, being near the Merrimack River between New Hampshire and the sea. The money to purchase the house was raised by the chapter partly through chapter dues assessed on the members and partly by voluntary subscriptions from the public. It was restored as far as possible to its original plan and effort was made to keep everything in harmony with its old time surroundings. A beginning has been made in collecting china, furniture, books, pictures and other relics to be left on exhibition in the house.

" The house was used in the year 1907 for the following purposes: (1) As a meeting place for the chapter where historical papers and essays are read at the meetings. The regular meetings of the chapter are held about once a month. (2) As a free public exhibition hall. (3) As a hall for lectures to the public

upon historical, artistic and kindred subjects by eminent antiquarians, artists, etc.; a fee is charged for admission to these lectures and the net proceeds used to defray the expenses of maintaining the house, i. e., for repairs, heat, lighting, interest on mortgage, etc. (4) As a place of entertainment. The house is let by the chapter from time to time for a stipulated fee to persons desiring to give entertainments there. The fees obtained in this way are used to defray the expense of maintaining the house. . . .

" Free use of the house is given for charitable purposes. In this way free use of it has been given to the Trained Nurses' Association of Lowell and for the benefit of earthquake sufferers. School children are entertained there from time to time by the chapter for the instruction they may receive from an examination of the house and the exhibits there. Washington's Birthday and Lincoln Day are celebrated there by the chapter with appropriate exercises.

" The only income which the chapter receives outside of membership dues is from the use of the Spalding House. No part of this income is divided among the members or is used or appropriated for other uses than those heretofore specified. . . ."

The judge found for the plaintiff; and the defendant appealed.

*W. W. Duncan*, for the defendant.

*A. S. Howard*, for the plaintiff.

BRALEY, J. The defendant having levied and collected a tax upon the real estate owned by the plaintiff, this action is brought to recover it back. It having been agreed that the omission to make the return required by R. L. c. 12, § 41, was not wilful, the only question for decision is whether the plaintiff is within the class of corporations described in R. L. c. 12, § 5, cl. 3, as " literary, benevolent, charitable and scientific institutions " whose real property, when used and occupied for the purpose for which they are incorporated, is exempted from taxation.

The plaintiff is a corporation chartered under R. L. c. 125 " for the purpose of perpetuating the memory of the men and women who achieved American independence, of acquiring and protecting historic spots, encouraging historical research and the publication of its results, preserving documents and

relics and individual records of revolutionary soldiers and patriots, and promoting the celebration of patriotic anniversaries, or cherishing, maintaining and extending the institutions of American freedom, and fostering true patriotism and love of country. Also for the purpose of holding real estate so far as may be necessary for its lawful ends." In furtherance of these purposes it has purchased, with funds raised from dues assessed on its members and voluntary contributions by citizens, the estate known as the "Spalding House," formerly owned and occupied by soldiers who served in the war of the Revolution. It may be assumed, in the absence of any affirmative statement in the agreed facts to the contrary, that the house is not only owned but occupied by the plaintiff, even if the occasional hiring of the premises by others provides an income which is exclusively devoted to the work of the corporation. *Wesleyan Academy* v. *Wilbraham*, 99 Mass. 599. The right to an exemption from taxation is claimed by the plaintiff because it is either a literary or a benevolent institution.

The objects which the plaintiff was organized to promote having been defined by its charter, they cannot be enlarged by extraneous reference to the terms of incorporation of the national organization of which the plaintiff is a chapter or branch. *Masonic Education & Charity Trust* v. *Boston*, 201 Mass. 320.

In *New England Theosophical Corp.* v. *Boston*, 172 Mass. 60, it was held by the whole court that the plaintiff, though instituted for the dissemination of theosophical ideas and the procurement of converts through the collection of books on the subject, with instructions and other literary work explanatory of the tenets of the society, was not a literary institution within the meaning of the statute. It was organized to procure converts to that belief, all other purposes of organization being made subordinate, and the element of general benefit to the public which is conferred where an institution of learning is founded for the promotion of education in the liberal arts, or in the sciences, or where a library is established for the general diffusion of knowledge, was wanting. A private corporation, conducted for the sole benefit of its members, although the general purpose in a popular sense may be of limited educational value, does not confer upon the public that advantage and aid

which it is the purpose of the statute not only to recognize but to encourage. This distinction appears and was applied in favor of the exemption in *Wesleyan Academy v. Wilbraham*, 99 Mass. 599, and in *Emerson* v. *Milton Academy*, 185 Mass. 414. See *Minns* v. *Billings*, 183 Mass. 126, 130.

If the sole object of the plaintiff had been the gratuitous collection and publication of facts connected with our revolutionary history, this work would have been educational and of great value to the community. It would disseminate useful knowledge similar to that afforded by a free lectureship on such topics or by a library of historical works treating of the subject and opened free of charge for all those who wished to read or consult them, under such reasonable rules as might be prescribed. The foundation upon which such an institution rests would be in aid of letters and charitable by intendment of law. *Yates* v. *University College*, L. R. 7 H. L. 438. To encourage and promote historical research and the publication of the results in the form of books, pamphlets or periodicals without pecuniary profit or charge, which was one of the chartered purposes of the corporation, while not so extensive an aid in the diffusion of historical information as a library open to the public and composed of such works would be, nevertheless is within the statutory category, and property held and occupied for this purpose is exempt. *Minns* v. *Billings*, 183 Mass. 126. *Drury* v. *Natick*, 10 Allen, 169. *Cary Library* v. *Bliss*, 151 Mass. 364. *Dexter* v. *Harvard College*, 176 Mass. 192. *Jones* v. *Habersham*, 107. U. S. 174. If the word "benevolent," without qualifying words, may include acts springing from mere good will or a sense of moral duty, yet when used in connection with "charitable" it is synonymous with it if such appears to have been the intention of the testator or settlor in making the gift. *Saltonstall* v. *Sanders*, 11 Allen, 446, 465, 470. *Chamberlain* v. *Burns*, 111 Mass. 267, 268. *Massachusetts Society for the Prevention of Cruelty to Animals* v. *Boston*, 142 Mass. 24, 27. *Minot* v. *Attorney General*, 189 Mass. 176, 179. *Fox* v. *Gibbs*, 86 Maine, 87. In *Young Men's Protestant Temperance & Benevolent Society* v. *Fall River*, 160 Mass. 409, 412, where an exemption was claimed under St. 1889, c. 465, re-enacted in R. L. c. 12, § 5, cl. 3, it was said "that they must be construed as intending to describe

institutions of a similar kind." But if in *Franklin Square House* v. *Boston*, 188 Mass. 409, 410, although referred to, the question was left undecided, the statute plainly exempts institutions which a court of equity would hold to be within the provisions of St. 43 Eliz. c. 4, and charitable institutions organized to administer trusts in aid of the general welfare which are the outgrowth of the conditions of modern society, and although not named in the trusts found in this statute, are held to be within its spirit and intent. *Odell* v. *Odell*, 10 Allen, 1. *Jackson* v. *Phillips*, 5 Allen, 539, 551. *Saltonstall* v. *Sanders*, 11 Allen, 446, 469. *Rotch* v. *Emerson*, 105 Mass. 431. *Bartlett, petitioner*, 163 Mass. 509. *Sherman* v. *Congregational Home Missionary Society*, 176 Mass. 349. *Minns* v. *Billings*, 183 Mass. 126. *Franklin Square House* v. *Boston*, 188 Mass. 409. *Farrigan* v. *Pevear*, 193 Mass. 147. *Masonic Education & Charity Trust* v. *Boston*, 201 Mass. 320. In the application of this principle, among many other instances, gifts of either real or personal property for the improvement of agriculture, the protection of animals, the prevention of cruelty to children, the promotion of horticulture or of temperance or morality, the establishment of lifeboats, the preservation of the lives of those exposed to the perils of the sea, and the encouragement of good servants, have been recognized and sustained as charities. *Lackland* v. *Walker*, 151 Mo. 210. *Massachusetts Society for the Prevention of Cruelty to Animals* v. *Boston*, 142 Mass. 24. *People* v. *New York Society for the Prevention of Cruelty to Children*, 42 App. Div. (N. Y.) 83. *Commissioners of Income Taxes* v. *Pemsel*, [1891] A. C. 531, 572. *Rotch* v. *Emerson*, 105 Mass. 431. *Saltonstall* v. *Sanders*, 11 Allen, 446. *Johnston* v. *Swann*, 3 Madd. 457. *Richardson* v. *Mullery*, 200 Mass. 247. *Loscombe* v. *Wintringham*, 13 Beav. 87.

The purposes described in the plaintiff's charter are neither contrary to law nor opposed to morality. It has aided in the relief of the destitute, made gifts to the public schools, assisted in the establishment of a public library, and in the maintenance of a boys' club for industrial work and a sewing class for girls. The plaintiff also has contributed money for the promotion of historical research, the preservation of historical sites, and has inculcated patriotism by perpetuating the memory of the men

and women who were instrumental in achieving our independence. If the means employed are somewhat diversified and elaborate, the ends served are wholly beneficial to the community. The diffusion of knowledge, the relief of the poor, the fostering of love of country and of respect for our civil institutions, all tend to raise the standard and improve the quality of citizenship, and not only relieve the burdens of government but advance the public good. *Donohugh's appeal,* 86 Penn. St. 306. *Ould* v. *Washington Hospital for Foundlings,* 95 U. S. 303, 311. The gratuitous benefit thus conferred serves only charitable purposes and entitles the plaintiff to the statutory exemption.

*Judgment affirmed.*